# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

|  |  |
|---|---|
| TARUN KUMAR, | CASE NO. 3:26-CV-00132-JJH |
| Petitioner, | JUDGE JEFFREY J. HELMICK |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| FREDRICK W. STEVENS, IN HIS OFFICIAL CAPACITY AS SENECA COUNTY SHERIFF, *et al.*, | **REPORT AND RECOMMENDATION** |
| Respondents. [1] |  |

On January 20, 2026, Petitioner Tarun Kumar filed a petition under 28 U.S.C. § 2241 for a writ of habeas corpus. (ECF #1). He is currently detained at the Seneca County Jail in Tiffin, Ohio. This matter was referred to me for preparation of a Report and Recommendation. (Non-document entry of Jan. 20, 2026). After review of the record and applicable law, I recommend the District Court conditionally **GRANT** the petition.

### PROPER RESPONDENT

Initially, Respondents assert the sole proper respondent is Kevin Raycraft, Director of the ICE Detroit Field Office and request the Court dismiss the other named parties, Fredrick Stevens, in his capacity official capacity as Seneca County Sheriff; Todd Lyons, in his official capacity as Acting Director of ICE; Kristi Noem, in her official capacity as Secretary of the Department of

---

[1]     On March 23, 2026, Markwayne Mullin replaced Kristi Noem as Secretary of the Department of Homeland Security. On April 2, 2026, Todd Blanche became Acting Attorney General of the United States, replacing Pamela Bondi. Under Fed. R. Civ. P. 25(d), the named successors, Markwayne Mullin and Todd Blanche, are automatically substituted as parties.

1

Homeland Security (DHS); and Pamela Bondi, in her official capacity as Attorney General of the United States. (ECF #8 at PageID 57).

In the context of a habeas corpus petition filed by an alien detained in a local detention facility contracted by ICE, the Sixth Circuit has held that "although the warden of each detention facility technically has day-to-day control over alien detainees, the [ICE] District Director for the district where a detention facility is located 'has power over' alien habeas corpus petitioners." *Roman v. Ashcroft*, 340 F.3d 314, 320 (6th Cir. 2003). Therefore, "a detained alien generally must designate his immediate custodian—the [ICE] District Director for the district where he is being detained—as the respondent to his habeas corpus petition." *Id.*; *see also Woldeghergish v. Lynch*, No. 1:25-cv-461, 2025 WL 2469584, at *1 (S.D. Ohio Aug. 5, 2025), *report and recommendation adopted*, 2025 WL 2468042 (S.D. Ohio Aug. 27, 2025).

The Sixth Circuit has also recognized possible exceptions to the immediate-custodian rule, explaining:

> Some courts are also willing to make an exception to the immediate custodian rule in other extraordinary circumstances. For example, courts have noted the INS's ability, as a practical matter, to deny aliens any meaningful opportunity to seek habeas corpus relief simply by transferring aliens to another district any time they filed a habeas corpus petition. *Chavez-Rivas [v. Olsen]*, 194 F.Supp.2d [368] at 374 [(D. N.J. 2002)]. Aliens remaining in detention for extended periods are often transferred several times during their detention. *See Lee v. Ashcroft*, 216 F.Supp.2d 51, 55 (E.D.N.Y. 2002) ("[T]he location of custody, and the identity of the day-to-day custodian, frequently change when detainees are transferred among INS facilities, all of which are under the control of the Attorney General."). In light of these transfers, one court reasoned that an alien may properly name a respondent other than his immediate custodian because a petition naming a higher-level official, such as the Attorney General, could be adjudicated without interruption in the event of a transfer. *Arias-Agramonte [v. Comm'r Of I.N.S.*, No. 00 CIV. 2412(RWS)], 2000 WL 1617999, at *8 [(S.D.N.Y. Oct. 30, 2000)] (explaining that a petition naming only one's immediate custodian would be dismissed when the alien was transferred to another local district).

*Roman*, 340 F.3d at 325-26 (cleaned up). Thus, "an exception might be appropriate if the INS were to exercise its transfer power in a clear effort to evade an alien's habeas petitions." *Id.* at 326. Recently, some district courts in the Sixth Circuit have not dismissed higher-level officials from similar proceedings to ensure Respondents maintain authority to enforce the court's grant of habeas relief. *See, e.g.*, *Sanchez Alvarez v. Noem*, 807 F.Supp.3d 777, 791 (W.D. Mich. 2025) (declining to dismiss the Secretary of Homeland Security as respondent); *Gimenez Gonzalez v. Raycraft*, 807 F.Supp.3d 755, 762-63 (E.D. Mich. Oct. 27, 2025) (same for the Attorney General); *but see Hango v. McAleenan*, No. 1:19-cv-00606, 2019 WL 7944352, at *2-3 (N.D. Ohio Nov. 13, 2019) (granting motions to dismiss Secretary of Homeland Security, Attorney General, and County Sheriff as respondents leaving the Field Director of the ICE Detroit Field Office as sole respondent), *report and recommendation adopted*, 2019 WL 6695829 (N.D. Ohio Dec. 9, 2019).

I recommend the District Court dismiss Seneca County Sheriff Fredrick Stevens. But to ensure Respondents maintain authority to enforce a grant of habeas relief and order that Petitioner receive a bond hearing if Petitioner were transferred out of the district under Respondent Raycraft's control, I recommend the District Court not dismiss Acting Director Todd Lyons, Secretary Markwayne Mullin, or Acting Attorney General Todd Blanche as Respondents to these proceedings.

**BACKGROUND**

Petitioner is a native and citizen of India and has no criminal history. (ECF #8-1 at PageID 80, 82). He climbed over a border fence and entered the United States on October 7, 2019, near Calexico, California. (*Id.*). Shortly after Petitioner crossed the border, a Border Patrol agent detained him, determined he entered the United States at a time and place other than designated

3

by the Secretary of DHS, and arrested him for further processing. (*Id.* at PageID 80-81). On October 8, at the El Centro Sector Processing Center, Petitioner admitted he crossed the border without being inspected by an immigration officer at a designated port-of-entry and did not have the necessary legal documents to enter the country lawfully. (*Id.* at PageID 81). Petitioner also said he feared persecution or torture if returned to India. (*Id.* at PageID 82). The immigration officer determined Petitioner is inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(l) for not possessing a valid entry document and should be processed for expedited removal pending a determination that his fear of persecution or torture is credible. (*Id.* at PageID 80; ECF #8-2 at PageID 83).

On November 14, 2019, DHS issued a Notice to Appear for regular removal proceedings under 8 U.S.C. § 1229a after an asylum officer determined Petitioner demonstrated a credible claim of persecution or torture if returned to India. (ECF #8-4 at PageID 85-86). In the Notice, DHS classified Petitioner as "an alien present in the United States who has not been admitted or paroled" and stated he is subject to removal pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.* at PageID 85). As part of the removal proceedings, Petitioner submitted an I-589 Application for Asylum and for Withholding of Removal that also sought protection under the Convention Against Torture. (*See* ECF #1-1 at PageID 26).

On June 18, 2020, ICE notified the Executive Office for Immigration Review that Petitioner was released from ICE custody on a $15,000 bond. (ECF #8-3 at PageID 84).

On December 21, 2023, the immigration judge (IJ) granted DHS's motion to dismiss the removal proceedings without prejudice. (ECF #1-1 at PageID 26-28). Petitioner appealed that decision on January 17, 2024, because the dismissal effectively terminated his applications for relief from removal, including asylum. (ECF #8-5 at PageID 87-92). The Board of Immigration

Appeals (BIA) received Petitioner's appeal on January 19, 2024. (*Id.* at PageID 87) (noting "Filed at BIA on: 1/19/2024"). On March 11, 2026, DHS requested the matter be returned to the IJ for further proceedings, including "for testimony on his application for relief." (ECF #12-2 at PageID 123).

According to Petitioner, immigration authorities arrested him on December 17, 2025, when he stopped at a semi-truck weigh station and has been in ICE custody ever since. (ECF #1 at PageID 7).

Initially, Petitioner argued he is subject to detention under 8 U.S.C. § 1226(a), not detention under § 1225(b)(1) or (b)(2), because § 1226(a) applies to noncitizens who, like Petitioner, have been living in the United States and were charged with inadmissibility under § 1182(a)(6)(A)(i). (ECF #1 at PageID 10). He also argued his continued detention without a hearing to determine whether he can be released on bond violates his right to due process. (*Id.* at PageID 22-23).

Respondents oppose the petition. (ECF #8). First, they contend the Court does not have jurisdiction to review Petitioner's claims and Petitioner did not exhaust administrative remedies. (*Id.* at PageID 57-67). Turning to the merits, Respondents argue Petitioner is properly detained under § 1225(b)(1)(B)(ii), or alternatively, under § 1225(b)(2). (*Id.* at PageID 67-72). They assert that applicants for admission, like Petitioner, may be paroled into the country only for urgent humanitarian reasons or significant public benefit under § 1182(d)(5). (*Id.* at PageID 72-73). They conclude that § 1226 does not affect their authority to detain Petitioner under § 1225 and argue Petitioner has not demonstrated a violation of his due process rights. (*Id.* at PageID 73-75).

Noted above, documents attached to Respondents' opposition show Petitioner was released from ICE custody on a $15,000 bond in June 2020. (ECF #8-3). In Reply, Petitioner argues he is subject to detention under 8 U.S.C. § 1226(a), not detention under § 1225(b)(1) or (b)(2), because ICE released him on bond under § 1226(a) and that provision governs his detention on re-arrest. (ECF #9 at PageID 98, 100). Petitioner also argues Respondents violated his right to due process when ICE re-arrested him without holding a pre-deprivation hearing showing a change in circumstances justifying detention. (ECF #9 at PageID 100).

### HABEAS CORPUS JURISDICTION

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained in the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004). The primary habeas statute explicitly authorizes federal courts, including district courts, the power to issue the writ to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). True, a district court's habeas powers are limited in the immigration context. *See Hamama v. Adducci*, 912 F.3d 869, 876 (6th Cir. 2018) (explaining "Congress stripped the courts of jurisdiction to grant habeas relief" for challenges to removal orders). Nevertheless, "[f]ederal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal." *Jiang Lu v. U.S. ICE*, 22 F.Supp.3d 839, 841 (N.D. Ohio 2014) (citing *Denmore v. Kim*, 538 U.S. 510, 517-18 (2003) (holding that while 8 U.S.C. § 1226(e) limits judicial review of discretionary judgments regarding detention and release, it did not strip the Court of jurisdiction to grant habeas relief in the context of a challenge to detention under the no-bail provision)); *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding that although a court "may not review discretionary decisions made by immigration

6

authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution").

Respondents assert four provisions of the INA bar judicial review of Petitioner's claims: 8 U.S.C. §§ 1252(e)(2), 1252(e)(3), 1252(g), and 1252(b)(9). I address each provision in turn.

**I.      8 U.S.C. § 1252(e)(2)**

Section 1252(e) governs judicial review of orders under § 1225(b)(1). 8 U.S.C. § 1252(e). Section 1225(b)(1) outlines the procedure for expedited removal. The expedited removal procedure requires an immigration officer to order an "applicant for admission"[2] removed from the country without further hearing or review. 8 U.S.C. § 1225(b)(1)(A)(i). An applicant is subject to expedited removal if the applicant (1) is inadmissible because he lacks a valid entry document; (2) has not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) is among those whom the Secretary of DHS has designated for expedited removal. *Id.* §§ 1225(b)(1)(A)(i), (iii)(I)-(II).

Under § 1252(e)(2), judicial review of any determination made under § 1225(b)(1) is limited to determinations of whether (A) the petitioner is an alien; (B) the petitioner was ordered removed under such section; and (C) whether petitioner can show he has been granted entry as lawful permanent resident, refugee, or asylee. *Id.* §§ 1252(e)(2)(A)-(C). Thus, whether the Court has subject-matter jurisdiction over the petition turns on the statutory basis for Petitioner's detention. For the reasons set forth below, I recommend the Court find Petitioner is subject to

---

[2]      "Applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1).

detention under § 1226(a), not § 1225(b) and thus the Court's review of the petition is not limited by § 1252(e)(2).

**II.** **8 U.S.C. § 1252(e)(3)**

Section 1252(e)(3), titled "Challenges on validity of the system," states:

Judicial review of determinations under § 1225(b) of this title and its implementation is available in an action instituted in the United States District Court for the District of Columbia, but shall be limited to determinations of—

(i) whether such section, or any regulation issued to implement such section, is constitutional; or

(ii) whether such a regulation, or a written policy directive, written policy guideline, or written procedure issued by or under the authority of the Attorney General to implement such section, is not consistent with applicable provisions of this subchapter or is otherwise in violation of law.

8 U.S.C. § 1252(e)(3)(A).

Here, Petitioner is not challenging a determination made under § 1225(b) or its implementation, but that the statute does not apply to him at all. The question does not require the Court to evaluate the "validity of the system," but to determine which detention provision applies to Petitioner. *See Coronado v. Sec., Dep't of Homeland Sec.,* No. 1:25-cv-831, 2025 WL 3628229, at *6 (S.D. Ohio Dec. 15, 2025). For those reasons, I find the Court's review is not precluded by § 1252(e)(3).

**III.** **8 U.S.C. § 1252(g)**

Next, Respondents invoke § 1252(g), which limits the jurisdiction of federal courts as follows:

Except as provided in this section and notwithstanding any other provision of law (statutory or non-statutory,) including [28 U.S.C. § 2241], or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of an alien arising from the decision or action by the Attorney General to

> commence proceedings, adjudicate cases, or execute removal orders against an alien under this chapter.

8 U.S.C. § 1252(g). Respondents argue because the decision to detain an alien pending removal proceedings arises from the decision to commence removal proceedings against an alien, § 1252(g) bars review of Petitioner's detention-based claims. (ECF #8 at PageID 61).

Both the Supreme Court and the Sixth Circuit have rejected Respondents' expansive interpretation of § 1252(g). In *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999), the Supreme Court held the provision does not cover "the universe of deportation claims," but "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 482 (emphasis in original). In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), a plurality of the Supreme Court reaffirmed § 1252(g)'s narrow scope: "[In *Reno*,] [w]e did not interpret this language to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves." *Id.* at 294 (plurality op.). The Sixth Circuit also distinguishes challenges to noncitizen removal from challenges to noncitizen detention. *See Hamama*, 912 F.3d at 877 (noting a "district court's jurisdiction over the detention-based claims is independent of its jurisdiction over removal-based claims"). Thus, if a petitioner "raise[s] a challenge that [does] not require the district court to address the merits of [their] order of removal," § 1252(g) does not strip the district court of jurisdiction. *Elgharib v. Napolitano*, 600 F.3d 597, 605 (6th Cir. 2010) (citation omitted).

Here, Petitioner does not challenge the commencement of removal proceedings against him, the adjudication of his case before the immigration court, or the execution of an order of removal. Instead, he challenges his continued detention without bond pending removal

proceedings because the detention provision under which he is detained does not apply to him. (ECF #9 at PageID 95-100). His claims thus fall outside the narrow scope of § 1252(g).

**IV.    8 U.S.C. § 1252(b)(9)**

Last, Respondents contend § 1252(b)(9) channels judicial review of Petitioner's claims to the court of appeals, not the district court. (ECF #8 at PageID 62). That provision states:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under [8 U.S.C. §§ 1151-1382] shall be available only in judicial review of a final order under this section. Except as otherwise provided, no court shall have jurisdiction, by habeas corpus under [28 U.S.C. § 2241] or any other habeas provisions, by section 1361 or 1651 of such title, or by any other provisions of law (statutory or non-statutory), to review such an order or such questions of law and fact.

8 U.S.C. § 1252(b)(9). In conjunction with 8 U.S.C. § 1252(a)(5), which provides that a petition-for-review filed with an appropriate court of appeals is the exclusive means for judicial review of an order of removal, Respondents assert "*any* issue—whether factual or legal—arising from *any* removal-related activity can be reviewed *only* through the [petition-for-review] process." (ECF #8 at PageID 62) (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016)) (emphasis in original). Citing *Jennings*, Respondents argue those provisions "divest district courts of jurisdiction to review both direct and indirect challenges to removal orders, including decisions to detain for purposes of removal or for proceedings." (ECF #8 at PageID 64).

Respondents' argument is unavailing. First, *Jennings* does not interpret § 1252(b)(9) so expansively to channel every challenge to a noncitizen's detention into the petition-for-review process. Indeed, the Supreme Court recognized that reading the provision to include every decision challenging detention, as Respondents assert here, would bring about absurd results:

10

> Interpreting "arising from" in this extreme way would also make claims of prolonged detention effectively unreviewable. By the time a final order of removal was eventually entered, the allegedly excessive detention would have already taken place. And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

*Jennings*, 583 U.S. at 293. And while Respondents would have the Court read *Jennings* to preclude the district court from hearing every challenge to a noncitizen's detention simply because the noncitizen is in removal proceedings, that is a significant departure from the Supreme Court's holding. The *Jennings* Court declined to provide a comprehensive interpretation of the scope of § 1252(b)(9), but determined the provision does not bar district court jurisdiction when the petitioner does not "ask[] for review of a removal order," "challeng[e] the decision to detain them *in the first place* or to seek removal," or challenge the process to determine removability. *Id.* at 294-95 (emphasis supplied). Here, Petitioner does not ask this Court to review a removal order, challenge the decision to initially detain him in 2019 and place him in removal proceedings, or challenge the process to determine removability. Instead, Petitioner contends he is unlawfully detained without a bond hearing.

Respondents rely on the Third Circuit's recent decision in *Khalil v. President, United States*, 164 F.4th 259 (3rd Cir. 2026) (per curiam). In *Khalil*, the petitioner, a lawful permanent resident, advocate for Palestinian human rights, and outspoken critic of "Israel's military operation in Gaza," challenged both the basis for removability and his detention pending removal proceedings after the Secretary of State determined he was removable under 8 U.S.C. § 1227(a)(4)(C) because his presence and activities in the country would have potentially serious adverse foreign policy consequences for the United States. 164 F.4th at 266. After the government detained petitioner and served him with a Notice to Appear, he sought habeas relief in federal court, challenging his

11

detention as impermissibly punitive, the lawfulness of removal, and governmental misconduct under the First and Fifth Amendments, the Administrative Procedures Act, and Supreme Court precedent. *Id.* at 276; *see also id.* at 266. The Third Circuit held that § 1252(b)(9) stripped the district court of jurisdiction over the petition, finding that his detention-based challenge was "inextricably linked" to his removal-based challenges. *Id.* at 274.

That is not the case here. Petitioner's challenge to his detention is not "inextricably linked" his removal proceedings. His argument that he is unlawfully detained without a bond hearing under § 1225 does not repackage an argument about removal; in fact, his petition does not challenge removal proceedings at all. For those reasons, *Khalil* is distinguishable and § 1252(b)(9) does not apply. Other district courts in and outside of the Sixth Circuit have reached the same conclusion. *See Singh v. Stevens*, ___ F.Supp.3d ____, 2026 WL 456489, at *3 (N.D. Ohio Feb. 18, 2026); *Coronel-Hernandez v. Woosley*, No. 4:26-cv-20, 2026 WL 227011, at *2-3 (W.D. Ky. Jan. 28, 2026); *Giyosov v. Jamison*, No. 26-0298, 2026 WL 209839, at *3-4 (E.D. Penn. Jan. 27, 2026).

Ultimately, the District Court should reject Respondents' assertion that jurisdiction to grant habeas relief is lacking.

### EXHAUSTION OF ADMINISTRATIVE REMEDIES

Respondents next argue the Court should dismiss the petition because Petitioner has not yet requested a bond redetermination hearing before an IJ and therefore has not exhausted his administrative remedies.

Generally, a party must exhaust administrative remedies before seeking relief from the federal courts. *McCarthy v. Madigan*, 503 U.S. 140, 144-45 (1992). "Exhaustion of administrative remedies serves numerous purposes, including protecting the authority of administrative agencies,

12

limiting interference in agency affairs, and promoting judicial efficiency by resolving potential issues and developing the factual record." *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003). Exhaustion is required when Congress specifically mandates it, but when no statute requires a petitioner to administratively exhaust his remedies (as is the case here), the decision to require exhaustion is within the sound discretion of the court. *McCarthy*, 503 U.S. at 144; *see also Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013); *Perkovic v. I.N.S.*, 33 F.3d 615, 619 (6th Cir. 1994) (concluding exhaustion requirements not written into the text of the statute are prudential).

District courts in this Circuit have widely recognized that "[t]he Sixth Circuit has not decided whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition for unlawful mandatory detention." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (collecting cases). Nor has the Sixth Circuit formally adopted a standard for deciding when prudential exhaustion applies. But many courts in this Circuit have applied the three-factor test used in *Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007). There, the court applied its own prudential exhaustion standard in the immigration context, requiring prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Puga*, 488 F.3d at 815. If a petitioner does not exhaust prudentially required administrative remedies, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).

13

Nonetheless, even if the factors weigh in favor of requiring exhaustion, a court may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (citation omitted); *see Shearson*, 725 F.3d 588.

Here, the first *Puga* factor favors waiving the exhaustion requirement. Whether an alien is detained under § 1226(a) and thus entitled to a bond hearing rather than mandatory detention under § 1225(b)(2)(A) is principally a legal question of statutory interpretation that does not require the record that would be developed by appealing to the BIA. *See McKart v. United States*, 395 U.S. 185, 197-98 (1969) (explaining that a case's focus on issue of statutory interpretation that did not implicate agency's expertise favored excusing exhaustion). Moreover, as recently determined, courts are not bound by and are not required to give deference to an agency's interpretation of a statute. *See Loper Bright Enter. v. Raimondo*, 603 U.S. 369, 413 (2024) (noting that "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority.").

Second, it does not appear that relaxing the exhaustion requirement on this particular legal question would encourage the deliberate bypass of the administrative scheme because resolution of the underlying question will provide definitive guidance for future administrative proceedings. Once the legal question is resolved, the issue should cease to arise. *See Rodriguez v. Bostock*, 779 F.Supp.3d 1239, 1251-52 (W.D. Wash. 2025).

Finally, it is doubtful that IJ or BIA review of Petitioner's custody would allow the agency to correct its own mistakes and preclude the need for judicial review. In *Matter of Yajure Hurtado*,

14

29 I&N Dec. 216, 220 (BIA 2025), the BIA affirmed the IJ's determination that he "did not have authority over [a] bond request because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." That decision, not binding on judicial courts but binding on the agency and immigration courts, conclusively rejects Petitioner's arguments in this case. Thus, an appeal to the BIA would not preclude the need for judicial review but simply delay it.

Alluded to above, an appeal to the BIA would be a futile gesture. The IJ and the BIA are bound by the decision in *Yajure Hurtado*, so there is no room for those administrative bodies to reach any conclusion other than that the IJ lacks authority to consider Petitioner's custody redetermination request. *See Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (in view of Attorney General's submission that the challenged rules of the prison were "validly and correctly applied to petitioner," requiring administrative review through a process culminating with the Attorney General "would be to demand a futile act").

The factors weigh against requiring administrative exhaustion and, in the alternative, requiring administrative exhaustion would be futile. *See Puerto-Hernandez v. Lynch*, 808 F.Supp.3d 802, 814  (W.D. Mich. 2025); *Velasco-Sanchez v. Raycraft*, No. 2:25-cv-13730, 2025 WL 3553672, at *5 (E.D. Mich. Dec. 11, 2025). For those reasons, I recommend the District Court waive the prudential exhaustion requirement.

### MERITS REVIEW

The INA governs the detention and removal of noncitizens. At issue is whether Petitioner is properly subject to detention under 8 U.S.C. § 1225(b) of the INA and therefore ineligible for a

15

custody redetermination before an IJ. Described more fully below, Petitioner was detained shortly after crossing the border and was initially considered for removal under the expedited removal proceedings of § 1225(b)(1) but was placed in regular removal proceedings under 8 U.S.C. § 1229a following a positive credible-fear determination.

## I.      Statutory Basis for Detention

Answering the question before the Court boils down to the interpretation of **§§** 1225 and 1226. "A statute should be construed so that effect is given to all its provisions." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *see Corley v. United States*, 556 U.S. 303, 314 (2009); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (noting that courts "must give effect to the clear meaning of statutes as written") (citation omitted). "When interpreting a statute, the inquiry 'begins with the statutory text, and ends there as well if the text is unambiguous.'" *See In re Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (citation omitted). But "the meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." *King v. Burwell*, 576 U.S. 473, 486 (2015) (quotation omitted). "[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Roberts v. Sea-Land Servs., Inc.*, 566 U.S. 93, 101 (2012) (citation omitted). The Court must also "use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright*, 603 U.S. at 400. Importantly, the title of the statute and the heading of a section within the statute are instructive for resolving doubt about the meaning of the statute. *Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 780) (E.D. Mich. 2025); *see also Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ("[T]he title of a statute and the heading of a section are tools available for the resolution of a doubt about the meaning of the statute.") (internal quotations and citations omitted).

Section 1225 applies to "applicants for admission," defined as any "alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). Under § 1225(b)(1), applicants for admission who are inadmissible are removed "without further hearing or review" under an expedited removal process unless the noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution" in which case the noncitizen is referred for an asylum interview. *Id.* §§ 1225(b)(1)(A)(i)-(ii). If the asylum officer concludes the noncitizen does not have a credible fear of persecution, "the officer shall order the [noncitizen] removed from the United States without further hearing or review," and the noncitizen must be detained until removed. *Id.* §§ 1225(b)(1)(B)(iii)(I) and (IV). But if the officer finds the noncitizen has a credible fear of persecution, "the [noncitizen] shall be detained for further consideration of the application for asylum" during regular removal proceedings under § 1229a. *Id.* § 1225(b)(1)(B)(ii); 8 C.F.R. 208.30(f). Under § 1225(b)(2)(A), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [§ 1229a]."

There is a limited exception to detention under § 1225(b): the Attorney General may "for urgent humanitarian reasons or significant public benefit" temporarily parole noncitizens detained under § 1225(b)(1) and (b)(2). 8 U.S.C. § 1182(d)(5)(A). Parole from custody under § 1182(d)(5)(A) is not considered an "admission" of the noncitizen; such parole "employs a legal fiction whereby noncitizens are physically permitted to enter the country but are nonetheless 'treated' for legal purposes 'as if stopped at the border.'" *Martinez v. Hyde,* 792 F.Supp.3d 211, 216 (D. Mass. 2025) (citation omitted). A noncitizen paroled into the country is still treated as an

17

applicant for admission subject to the expedited removal process under § 1225(b)(1). *See* 8 U.S.C. § 1182(d)(5)(A). And when the purpose of parole, in the opinion of the Secretary of Homeland Security, has been served, the noncitizen must return to the custody from which he was paroled. *Id.* In effect, once parole ends, the noncitizen is subject to detention under § 1225(b). *See id.* (after returned to custody, "his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States").

Section 1226 is described as the "default rule" for detaining noncitizens already present in the United States, *Jennings,* 583 U.S. at 288, pending the outcome of the standard removal process under § 1229a, *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 108 (2020). It provides, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States" and, except as provided in § 1226(c), the Attorney General may detain or release the alien on bond or conditional parole. 8 U.S.C. §§ 1226(a)(2)(A)-(B). The Attorney General may also revoke bond or conditional parole at any time and detain the noncitizen. *Id.* § 1226(b). The pertinent regulations state that an officer may release the noncitizen if the noncitizen demonstrates his release would not pose a danger to property or persons and he is likely to appear for any future proceeding. 8 C.F.R. § 1236.1(c)(8). Relevant here, noncitizens detained under § 1226 have a right to request a custody redetermination (*i.e.,* a bond hearing) before an IJ. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1).

According to Respondents, Petitioner "remains subject to mandatory detention" because an officer determined he had a credible fear of persecution and must be detained for further consideration of his application for asylum. (ECF #8 at PageID 68) (citing 8 U.S.C. § 1225(b)(1)(B)(ii)). In the alternative, Respondents contend Petitioner is subject to mandatory

detention because he is an applicant for admission who is seeking admission and is not clearly and beyond a doubt entitled to be admitted and therefore must be detained for a proceeding under 8 U.S.C. § 1229a until removal proceedings have concluded. (ECF #8 at PageID 72, citing § 1225(b)(2)(A)). Petitioner argues he is subject to detention under § 1226(a) because ICE released him from custody on bond in June of 2020, consistent with its discretion to do so under § 1226(a)(2)(A). Curiously, although Respondents are aware that Petitioner was released, as evidenced by Respondents' attached documentation showing ICE released Petitioner from custody on a bond, they do not acknowledge in their opposition brief that Petitioner was released and remained on bond for over five years or address the effect of his release on the status of his current detention.

Petitioner was initially detained under § 1225(b)(1)(B)(ii) after an immigration officer determined he had a credible fear of persecution if returned to India and placed him in regular removal proceedings under § 1229a. (ECF #8-4 at PageID 85-86). Petitioner was then released from ICE custody in June 2020 on a $15,000 bond (ECF #8-3 at PageID 84), consistent with the discretionary release provision under § 1226(a)(2)(A). Petitioner's prior release on bond carries legal significance. DHS's decision to release Petitioner consistent with § 1226(a) is strong evidence the Department intended to detain him under § 1226(a) and not § 1225(b). *See Luna Sanchez v. Bondi*, No. 1:25-cv-018888, 2025 WL 3191922, at *4 (E.D. Va. Nov. 14, 2025). Citing *De Andrade v. Moniz*, 802 F.Supp.3d 325, (D. Mass. 2025), Petitioner contends that once a noncitizen is released on bond under § 1226(a), the government cannot arbitrarily re-detain him under § 1225(b). (ECF #9 at PageID 96). In *De Andrade*, DHS detained a noncitizen close to the border under § 1225(b), released him under § 1226(a), and years later re-detained him. 802 F.Supp.3d at

333. The court found that by releasing the noncitizen under § 1226(a) "the government failed to reserve its right to treat petitioner 'in the same manner as that of any other applicant for admission to the United States,'" as would be the case if petitioner was released on humanitarian parole under § 1182(d)(5)(A). *Id.* at 332. The court went on to explain:

> The act of [conditional] parole extinguished the legal fiction that a noncitizen who is physically present in the United States has, in fact, not effected an entry into the United States. And once having entered, petitioner can no longer be treated as an "applicant for admission" subject to expedited removal and mandatory detention under § 1225. He must be treated like any other unlawfully "present" noncitizen— and the lawfulness of his detention is governed by 8 U.S.C. § 1226.
>
> *  *  *
>
> Congress provided a mechanism for paroling applicants for admission into the United States without changing their status. *See* 8 U.S.C. § 1182(d)(5)(A). The government elected not to use that mechanism. It cannot now turn back the clock, and neither can the Court.

*Id.* at 332-33. Other courts considering factually similar situations have come to the same conclusion. *See Loja v. FCI Berlin, Warden*, 808 F.Supp.3d 227 (D.N.H. 2025); *Quinteros Moran v. Joyce*, No. 25 Civ. 9645, 2025 WL 3632895 (S.D.N.Y. Dec. 15, 2025); *Portillo-Argueta v. Simon*, No. 1:25-cv-2285, 2026 WL 184194 (E.D. Va. Jan. 23, 2026). This line of reasoning is persuasive and supports the conclusion that Petitioner, previously released on bond under § 1226(a) and re-detained years later, is not subject to mandatory detention under § 1225(b).

For those reasons, I recommend the District Court find that Petitioner is not subject to detention under § 1225(b)(1)(B)(ii) or § 1225(b)(2)(A), is being held under § 1226(a), and is eligible for a custody redetermination hearing before an IJ.

**II.      Due Process**

Now I address whether Petitioner's continued detention is a violation of due process. The Fifth Amendment guarantees freedom from deprivation of life, liberty, or property without due process of law. U.S. Const. amend. V. Immigration detention implicates significant liberty interests under the Due Process Clause. *Zadvydas*, 533 U.S. at 690-92 (applying the Due Process Clause in the immigration-detention context). The Due Process Clause extends to all "persons" regardless of status, including noncitizens. *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025); *Zadvydas*, 533 U.S. at 693 (the Due Process Clause of the Fifth Amendment "covers noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent"). To determine whether a civil detention violates a noncitizen's due process rights, courts apply the three-part balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). Under that test, a court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Id.* at 335; *see also Azalyar v. Raycraft*, 814 F.Supp.3d 926, 933-35 (S.D. Ohio 2026) (applying *Mathews* to the immigration-detention context). Here, Respondents very briefly address the Due Process claim, stating that "Petitioner's due process rights are protected by the immigration statutes" and he "has not shown that those protections are insufficient," but they present no argument related to the *Mathews* balancing test. (ECF #8 at PageID 74-75).

### 1. Private interest

The private interest at stake here "is the most elemental of liberty interests—the interest in being free from physical detention by one's own government." *Hamdi*, 542 U.S. at 529; *Zadvydass*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the very liberty interest that [the Due Process Clause] protects."). As numerous other courts have found, individuals released from civil immigration custody have a protectable liberty interest in remaining so. *See, e.g., Azalyar*, 814 F.Supp.3d at 933-34; *Zapata v. Kaiser*, No. 25-cv-7492, 2025 WL 2578207, at *3 (N.D. Cal. Sept. 5, 2025) (collecting cases); *cf. Ordonez-Lopez v. United States Dep't of Homeland Sec.*, No. EP-25-CV-470, 2025 WL 3123828, at *3 (W.D. Tex. Nov. 7, 2025) ("[N]oncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status."). Courts can also consider the noncitizen's condition of confinement to determine if the conditions are indistinguishable from criminal incarceration. *Martinez v. Noem*, No. 5:25-cv-1007, 2025 WL 2598379, at *2 (W.D. Tex. Sep. 8, 2025).

Petitioner was released on bond after an immigration officer necessarily determined he was not a flight risk or a danger to property or persons. (ECF #1 at PageID 2). Petitioner then spent more than five years at liberty in the United States and worked as a truck driver before immigration officials detained him at a weigh-in station. (*Id.*). As such, he possesses a significant private interest in his freedom from detention. Respondents do not contend the conditions of Petitioner's confinement at the Seneca County Jail differ in any material way from criminal incarceration. I find this factor weighs in favor of Petitioner.

### 2.    Risk of Erroneous Deprivation

The second factor concerns the risk of erroneous deprivation of that private interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. *Mathews,* 424 U.S. at 335. Petitioner has not received a redetermination hearing before an IJ. Respondents assert Petitioner is not eligible for a bond redetermination hearing because he is subject to mandatory detention. (ECF #8 at PageID 72). But prior to the most recent detention, Petitioner was released on bond after an immigration officer necessarily determined he was not a flight risk or a danger to property or persons and Respondents have not demonstrated otherwise. A re-detention, without any individualized assessment, leads to a high risk of erroneous deprivation of an individual's liberty interest. *Munoz Materano v. Arteta,* 804 F.Supp.3d 395, 419 (S.D.N.Y. 2025) (holding that "re-detention without an individualized assessment" establishes a "high risk of erroneous deprivation" of a protected liberty interest). This factor also favors Petitioner.

### 3.    Government Interest

The last *Mathews* factor concerns the government's interest in the procedure, as well as any financial or administrative burdens associated with permissible alternatives. *Mathews,* 424 U.S. at 335. As other district courts in the Sixth Circuit have recognized, the government has a strong interest in ensuring noncitizens do not harm their community and appear for future immigration proceedings. *Edahi v. Lewis*, No. 4:25-cv-129, 2025 WL 3466682, at *14 (W.D. Ky. Nov. 27, 2025); *Puerto-Hernandez*, 808 F.Supp.3d at 819 (citation omitted). But affording a noncitizen an individualized custody redetermination hearing, where the noncitizen may be released only if he shows he is not a danger to property or persons and will likely appear for future proceedings,

23

preserves the government's interests rather than impeding them. Petitioner lived and worked in the United States for five years before immigration officers took him into custody. He did not have a criminal history at the time he crossed the border into the country and Respondents do not claim he has since been accused, charged, or convicted of any criminal offenses. On balance, the factors weigh in favor of affording Petitioner an individualized custody redetermination hearing.

Accordingly, I conclude the District Court should find that § 1226(a), not § 1225(b), applies and so Petitioner's current detention under § 1225(b) violates his Fifth Amendment right to due process.

### CONCLUSION AND RECOMMENDATION

After review of the applicable law and the parties' arguments, I conclude Petitioner is not subject to detention under § 1225(b) and his continued detention without the possibility of a custody redetermination hearing violates his right to due process. I therefore recommend the District Court **GRANT** the petition and require Respondents to hold a custody redetermination hearing within seven business days of the Court's judgment on this Report and Recommendation for the Immigration Judge to determine whether Petitioner represents a danger to property or persons or poses a risk of flight.

Dated: April 27, 2026

DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE

24

OBJECTIONS, REVIEW, AND APPEAL

Within 14 days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the Magistrate Judge. *See* Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1); Local Civ. R. 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal, either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the Report and Recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the Report and Recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the Magistrate Judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*, 932 F.2d at 509). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).